**JONES** et al. v. **MERFELDT** et al.

No. 21758. March 20, 1934.

Paul Pinson and D. H. Linebaugh, for plaintiffs in error.

Lloyd C. Colter and J. Wood Glass, for defendants in error.

RILEY, C. J. This appeal involves the title to 60 acres of land allotted to Arlington Jones, a half-blood Cherokee Indian, who died intestate, April 25, 1906, in what is now Craig county, leaving as his sole and. only heir at law, his father, Levi Jones, a full-blood Cherokee Indian. This land is in Nowata county.

On May 8, 1907, Levi Jones executed a deed ·conveying the land here involved to one J. F. Madison, and thereafter on September 7, 1912, he executed a second deed conveying the said land to Madison. Neither of these deeds was approved as provided and required by law.

On September 7, 1912, J. F. Madison executed a deed to the land to John H. Merfeldt. Levi Jones died intestate May 28, 1916, leaving as his only heir, Archie Jones, a half-blood Cherokee Indian, who was, originally, the only plaintiff in this suit. John Merfeldt died testate in Nowata county, Okla., in 1923, leaving the land by will to defendants, his heirs and beneficiaries. All the above deeds were placed of record shortly after their execution, and the will of John H. Merfeldt was admitted to probate.

On February 7, 1928, Archie Jones entered into an attorney's contract with the firm of Linebaugh & Pinson, composed of D. H. Linebaugh and Paul Pinson, whereby he employed said firm to prosecute any and all suits in law or in ·equity necessary for the recovery of said land together with the

rents and profits, agreeing therein to pay said firm a sum equivalent to one-half of amounts recovered, and provided further:

"First party does hereby convey to second parties an undivided one-half interest in and to the said premises above described, and the said fee equivalent to one-half of all the sums recovered, shall together constitute the entire fee for the services of second parties."

Thereafter, on March 29, 1928, this action was commenced in the name of Archie Jones, represented by said firm of attorneys, for the recovery of said premises together with certain claimed rents and profits and to quiet title.

On June 5, 1928, J. F. Madison was made a party defendant, and thereafter on August 9, 1928, he filed a petition with the county court of Craig county for the approval. of the Levi Jones deeds to him. Said petition was, by order of the county court, set for hearing for August 22, 1928, and notice of such hearing was ordered to be given by personal service upon Archie Jones. Notice of such hearing was issued by the county judge and served personally upon Archie Jones on August 13, 1928. The hearing was thereafter ordered continued until September 6, 1928. On August 29, 1928, Archie Jones, joined by his wife, executed a deed for said land to J. F. Reinmiller, and at the same time assigned in writing to said J. F. Reinmiller his cause of action against defendants herein, then pending in the district court of Nowata county. On September. 6, 1928, the county court of Craig county entered an order approving the deed dated September 7, 1912, from Levi Jones to J. F. Madison, and indorsed his approval upon said deed, and on September 10, 1928, said deed showing such approval was refiled for record in the office of the county clerk of Nowata county.

On September 21, 1928, upon notice duly served, leave was obtained to file an amended petition making additional plaintiffs, and thereafter an amended petition was filed making J. F. Reinmiller and Linebaugh & Pinson additional parties plaintiff.

The amended petition set up two causes of action, one in ejectment and the other in equity to quiet the title. The petitioner alleged the allotment of the land in question to Arlington Jones, a Cherokee Indian enrolled opposite 4638; that the allottee died intestate in what is now Craig county, Okla., on April 25, 1926 (1906), seized and in pos-

session of the land; that he left surviving him as a sole heir at law Levi Jones, a Cherokee Indian of the full blood enrolled opposite 8483; that Levi Jones died intestate in Craig county, Okla., May 16, 1916, seized and possessed of the fee-simple title to said land, leaving as his sole and only heir at law the plaintiff Archie Jones. It then pleaded the attorney's contract and the conveyance and assignment from Archie Jones to J. F. Reinmiller, and alleged the wrongful detention of the possession of said premises by defendants, etc.

The second cause of action was for the cancellation of the deed from Madison to Merfeldt as a cloud upon their title, and for quieting title in plaintiff.

Defendants answered by general denial, except they admit that the land involved was a portion of the allotment of Arlington Jones, a half-blood Cherokee Indian; admit that Arlington Jones died intestate on April 25, 1906, in what is now Craig county, Okla., leaving as his only heir Levi Jones, a Cherokee Indian of the full blood; admitted that Levi Jones died about May 28, 1916, in Craig county, Okla., leaving as his only heir at law Archie Jones, a Cherokee Indian of the half blood. They then pleaded that they were in lawful possession by virtue of the deed of Levi Jones approved by the county court having jurisdiction of the settlement of the estate of Arlington Jones, the allottee. As to plaintiffs Linebaugh and Pinson and J. F. Reinmiller, the answer alleges:

"Defendants deny that the plaintiffs, D. H. Linebaugh and Paul Pinson, doing business as Linebaugh and Pinson, acquired any right, title or interest in and to said land by virtue of the contract attached to plaintiffs' amended petition, Exhibit 'A'.

"Defendants deny that on the 29th day of August, 1928, the plaintiff, Archie Jones, conveyed said land to J. F. Reinmiller, but assert the fact to be that the said J. F. Reinmiller did not acquire any right, title or estate in and to said lands by virtue of the pretended deed of conveyance described in the amended petition of the plaintiffs, Exhibit 'B'."

Plaintiffs replied by a general denial of new matter. The cause was tried to a jury. Plaintiff Reinmiller was not present in person, but was represented by Linebaugh & Pinson through Mr. Linebaugh. At the trial, defendants, over the objection of plaintiffs, were permitted to introduce evidence going to the good faith or want thereof of plaintiff Reinmiller in taking the deed of conveyance from Archie Jones, and the assignment of Archie Jones' interest in the cause of action. The two witnesses relied upon by defendants to prove want of good faith in Reinmiller were Achie Jones and D. H. Linebaugh.

Apparently based upon this evidence, the court instructed the jury, in part, as follows:

"You are instructed that if you should find and believe from the evidence in this case that the plaintiff J. F. Reinmiller in good faith purchased the rights of Archie Jones by means of a warranty deed or any other kind of conveyance, then the plaintiffs would be entitled to recover possession of said land and the sum of $180, as rental, unless you should find from the evidence that the plaintiff J. F. Reinmiller was merely substituted as a party plaintiff in order to comply with the requirements of our Supreme Court and that he did not in good faith purchase the land, but that his action was a subterfuge in order to attempt to constitute him as an intervening innocent third party, in which latter event, if you so find, your verdict should be for the defendants. If, however, you find that said J. F. Reinmiller purchased said land in good faith and for value, then your verdict should be for the plaintiffs.

"If you find that he purchased said land as a subterfuge, under the conditions hereinabove outlined on that point, and not in good faith and for value, and with knowledge of the pendency of the hearing in Craig county in relation to a requested approval of the deeds, the plaintiff cannot recover.

"However, you are instructed that the mere fact that the papers had been filed in the county court of Craig county would not of itself constitute notice to the plaintiff Reinmiller, because he is not bound by the records in that county and he would be entitled to rely upon the records in Nowata county; that is, even though a deed had been executed, he would be entitled to rely upon the fact that the deed had not been approved, and he would have a right to purchase the land; and the only thing that would make him a purchaser in bad faith would be the fact that he was a party with these other plaintiffs, and that he did not in good faith purchase said land and put up the money or other valuable consideration therefor, and that he had knowledge of the proceedings pending in the county court of Craig county."

The court also instructed the jury that the burden of proving that plaintiff Reinmiller was not a purchaser in good faith was upon defendants.

As to plaintiffs Linebaugh and Pinson, the court instructed the jury:

"The court instructs you that the plaintiffs, Linebaugh & Pinson, having a contract to recover possession and quiet title to the land coupled with a conveyance, are not constituted such an intervening third party as would prohibit the defendants from establishing their title by the procurement of an approval of their deed, inasmuch as Linebaugh & Pinson stepped into the shoes of Archie Jones, one of the plaintiffs herein."

The verdict was for defendants, and judgment was entered accordingly, and the plaintiffs prosecute this appeal.

It is first contended that the verdict and judgment should have been for plaintiffs, and that the court should have so directed. It is contended that the deeds of Levi Jones were absolutely void and neither Madison nor Merfeldt acquired any interest in the land. In support of this contention, plaintiffs cite Oklahoma Oil Co. v. Bartlett, 236 Fed. 488; McLish v. White, 97 Okla. 150, 223 P. 348; Miller, Adm'r. v. Tidal Oil Co., 130 Okla. 133, 265 P. 648.

But in the cases cited, the deeds involved were required, by the provisions of section 9 of the Act of Congress, May 27, 1908, to be approved by the court having jurisdiction of the settlement of the estate of the deceased allottee, and such approval was never obtained, except that of the Oklahoma Oil Company v. Bartlett, supra, wherein approval was by a county court other than that having jurisdiction of the settlement of the estate of the deceased allottee. Other cases are cited involving deeds which were absolutely void in any case and could in no event have been validated.

Here we are dealing with a different situation. It has been held by the Supreme Court of the United States that deeds such as that of Levi Jones are valid and binding when the approval thereof was made by the proper federal agency long after the date of the signing and delivery by the grantee, and in some cases after his death, and in one case after the grantor had filed suit to regain the land, and that such approval relates back to the date of signing and makes valid the conveyance which would otherwise be invalid.

In Anchor Oil Co. et al. v. Gray, 256 U. S. 519, 65 L. Ed. 1070, a case dealing with the authority of the Secretary of the Interior to approve and thereby confirm an oil and gas mining lease made by a full-blood Creek Indian allottee, it is held that such approval might be given at any time, either

before or after the death of the allottee, so far as the rights of the heirs and those claiming under them with notice were concerned, and the approval, when given, related back and took effect as of the execution of the lease by the parties named therein. The decision of this court in Sciota Oil Co. v. O'Hern, 67 Okla. 106, 169 P. 483, to the same effect was approved.

In Snell et al. v. Canard et al., 95 Okla. 145, 218 P. 813, and Fisher v. Grider, 109 Okla. 23, 234 P. 570, it is held:

"Attorneys who procured a contract from a full-blood Indian for the recovery of the land, which contract was duly approved by the county court prior to the approval of the deed of defendants, and which contract provided that the attorneys should receive one-half of the value of the lands in the event of recovery, are not entitled to recover anything in this cause, by reason of the fact that their client can recover nothing."

Under the rules announced in the above cases, this contention of plaintiffs cannot be upheld, and instructions given relative to the contract of Linebaugh & Pinson were correct. But the question of the right of Reinmiller under his deed and assignment remains to be considered. The Supreme Court of the United States in Anchor Oil Co. v. Gray et al., supra, held that the approval of the deed might be given at any time, either before or after the death of the allottee, so far as the rights of the heirs and those claiming under them with notice are concerned. The rights of Reinmiller would therefore appear to depend upon whether or not he had notice. In the Anchor Oil Company Case, supra, it was held that the purchaser from the heirs of the allottee had notice by reason of the filing of the lease in the office of the United States Indian Agent at the Union Agency at Muskogee under the Act of Congress, March 1, 1907, which provided that the filing theretofore or thereafter of any lease with that official should be deemed constructive notice. No federal statutes made any provision for notice by filing an unapproved deed with the proper recording officer of the state. Whatever constructive notice Reinmiller had would have been from the execution and recording of the two deeds from Levi Jones to Madison and the deed from Madison to Merfeldt, and the pending action by Archie Jones to recover land and possibly the application for the approval of the Levi Jones deed then pending in the county court of Craig county. However, the trial court held, and so

instructed the jury, that the mere fact that such application had been filed in Craig county would not of itself constitute notice to Reinmiller, "because he is not bound by the record in that county."

In Canfield v. Jack, 78 Okla. 127, 188 P. 1040, where one party had an unapproved deed similar to the Levi Jones deed, and had it recorded and was in possession thereunder, and the other party was claiming under a deed signed later, but approved by the proper agency prior to the approval of the first deed by the same agency, and the latter deed having been taken with full knowledge of the existence of a former deed, it was held that the doctrine of relation was not applicable so as to cut out the intervening interest of the holder of the deed later in date, but prior in approval. But in Brink v. Canfield, 78 Okla. 189, 187 P. 223, it was held:

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself."

And:

"Record examined, and held that the defendants each, except C. E. R., had either actual knowledge or constructive notice of the rights and equities of J., who, as his father's heir, shared in the estate of his deceased half-sister, and are therefore not bona fide purchasers for value, entitled to protection against the heir of J. in a suit involving the validity of a conveyance by J. in his lifetime."

The trial court limited the right of defendants as against Reinmiller to whether or not he was merely substituted as a party plaintiff in order to avoid the application of the doctrine applied by this court in Snell v. Canard, supra, and Fisher et al. v. Grider, supra, and whether or not his action was a subterfuge in order to attempt to constitute him an innocent third party.

The court instructed the jury, however, that the only thing that would make Reinmiller a purchaser in bad faith would be the fact that he was a party with the other plaintiffs, and that he did not in good faith purchase the land and put up the money or other valuable consideration therefor, and that he had knowledge of the proceedings pending in the county court of Craig county.

If, as contended by defendants, Reinmiller entered into this case and bought the deed and assignment from Archie Jones, the heir at law of Levi Jones, as a mere subterfuge in order to aid the attempt by plaintiffs to constitute him an intervening innocent third party, certainly he ought not to prevail. The evidence of defendants, if admissible under the pleadings, tends to uphold their contention, and the verdict of the jury. But it is earnestly contended by plaintiffs that this evidence was inadmissible under the pleadings and should have been stricken on their motion, and that without it there would be no basis for the instructions given on the question of good faith or want thereof.

This contention is not without merit if it be conceded that the question of whether or not Reinmiller was in good faith when he acquired his deed and assignment from Archie Jones is material, and if so, it be further conceded that the burden was upon defendants to prove bad faith on the part of Reinmiller. There was no pleading by defendants alleging fraud or bad faith on the part of Reinmiller. The general rule is that fraud or bad faith, when relied upon as a defense, must be pleaded before evidence is admissible to sustain it.

Section 260, C. O. S. 1921, provides:

"When the petition has been filed, the action is pending, so as to charge third persons with notice of its pendency, and while pending no interest can be acquired by third persons in the subject-matter thereof as against plaintiff's title; but such notice shall be of no avail unless the summons be served or the first publication made within 60 days after the filing of the petition."

This is what is known as the lis pendens statute.

In Baker v. Leavitt et al., 54 Okla. 70, 153 P. 1099, it is held:

"One who purchases real property from a party to an action involving the title thereto, after the institution and during the pendency of such action, is bound by the judgment rendered therein against his grantor, and acquires no greater rights than his grantor."

In that case plaintiff had procured a deed from one Maggie Baker at a time when an action was pending against her to cancel a deed alleged to have been procured by her from a Creek Indian allottee while he was a minor. Earl Baker's deed was procured from a defendant pendente lite. It was held that Earl Baker was bound by a judgment rendered against his grantor.

In the body of the opinion it is said:

"Section 4732, R. L. 1910 (section 260, C. O. S. 1921), known as the lis pendens statute, was enacted for the express purpose of preventing one from buying real property during the pendency of an action involving the title to the same. This section is applicable to the case at bar."

The general rule, as stated in 38 C. J. 29, is:

"As to plaintiff's complaint, and pleas and answers to it defensive in character, seeking merely to prevent a recovery, lis pendens arises in favor of defendant as against a purchaser from plaintiff from the time of the commencement of plaintiff's action, and more obviously so after an answer denying plaintiff's title, or after a crossbill has been filed."

And:

"A statute providing that, where a petition has been filed affecting real estate, the action is pending so as to charge third persons with notice of its pendency, and while pending no interest can be acquired by third persons in the subject-matter as against plaintiff's rights, has been held to apply in favor of defendants as against a purchaser from plaintiff."

"According to the general rule, the doctrine of lis pendens is applicable to transfers pendente lite by either party to the action or suit and has been applied to purchases from plaintiff as well as purchases from defendant." 38 C. J. 56.

In Garver et al. v. Graham (Kan. App.) 51 P. 812, the Court of Appeals of Kansas, construing the statute of that state, which is substantially the same as ours, said:

"That this applies equally to the defendant's title, under a cross-petition, we do not think will be questioned."

Therein is quoted with approval the definition of the doctrine of lis pendens by Judge Storey, as follows:

"A purchase made of the property actually in litigation, pendente lite, for a valuable consideration, and without any express or implied notice in point of fact, affects the purchaser in the same manner as if he had such notice, and he will accordingly be bound by the judgment or decree in the suit."

In the instant case Reinmiller not only had constructive notice of the action pending when he purchased from Archie Jones, but of necessity he must have had actual notice, for he not only procured a deed for the land in controversy, but also took an assignment of whatever Archie Jones might recover by way of rents and profits from the same land in the same action. It is true that at the time he procured his deed, the deed upon which defendants rely had not been approved by the county court having jurisdiction of the settlement of the estate of the allottee. But Reinmiller took with knowledge of the law that such deed might be properly approved before trial and thus preclude Archie Jones, his grantor. He also knew that the pleadings might thereafter be amended, as they were, so as to show and allege an approval of the Levi Jones deed.

Under the doctrine of lis pendens, as defined by Justice Storey, it would seem that if he had purchased for a valuable consideration and without any express or implied notice, the doctrine would have applied to him in the same manner as if he had such notice and he would have been bound by the judgment or decree in the suit. If he would have been bound had he purchased without actual knowledge expressed or implied, it would necessarily follow that whether he was or was not in good faith he would be bound by the judgment finally rendered. It was therefore not necessary for defendants to prove want of good faith, nor was the burden of proving bad faith cast upon defendants. It not being incumbent upon the defendants to prove bad faith on the part of Reinmiller, the fact that they were allowed to produce evidence going to that question without any allegations of bad faith in their answer did not prejudice Reinmiller, and the claim of reversible error on account thereof cannot be sustained.

The judgment is affirmed.

CULLISON, V. C. J., and SWINDALL, ANDREWS, and McNEILL, JJ., concur. BUSBY, J., not voting. BAYLESS, J., disqualified not participating.