### GILBERT v. GAINES.

No. 22325. Sept. 11, 1934.

Bond, Hatcher & Bond, for plaintiff in error.

T. H. Williams, Jr., for defendant in error.

RILEY, C. J. This action was originally commenced by defendant in error, William Gaines, to recover an undivided one-half interest in 100 acres of land situated in Grady county, Okla. The land involved was the surplus allotment of Wesley Gaines, a full-blood Choctaw Indian. Wesley Gaines, the allottee, died in February, 1904, while a minor, intestate, unmarried and without issue, leaving surviving him as his sole heirs, Thomas Gaines, his father, and William and Israel Gaines, full brothers.

It is agreed that the land descended under the provisions of the laws of Arkansas then in force in the Indian Territory, one-half to the father, Thomas Gaines, one-

fourth to each of the brothers, William Gaines and Israel Gaines. On February 4, 1909, Thomas Gaines conveyed to one E. F. Short a life estate of the grantor. The deed was fully approved by the county court having jurisdiction of the settlement of the estate of the deceased allottee.

On December 23, 1909, Thomas Gaines executed a general warranty deed purporting to convey all his right, title, interest, and estate in and to said land to said E. F. Short. This deed was not approved by the county court until October 21, 1927, after this action had been commenced. Thomas Gaines died July, 1923, intestate and unmarried, leaving as his only heir his son, William Gaines, plaintiff herein. The action originally was to recover only the one-half interest inherited by the father, Thomas Gaines.

On November 3, 1908, Thomas Gaines was, by the county court of Le Flore County, appointed guardian of the persons and estates of Israel and William Gaines, minors. Israel Gaines was then 16 years old and William Gaines was 13 years old.

On November 2, 1908, the guardian filed a petition in the county court of Le Flore county to sell the interest of said minors in the lands here involved, together with their interest in the homestead allotment, which is not involved in this action.

Order of sale was thereafter issued and the land was advertised and sold to W. C. Beesley upon a purported bid of $2,000. The sale was confirmed and guardian's deed was executed accordingly. On February 4, 1909, W. C. Beasley conveyed the land to said E. F. Short.

On February 17, 1909, E. F .Short and wife conveyed the land here involved to Charles Esterle. On December 10th, Charles Esterle and wife conveyed the land to Alice M. Gilbert, plaintiff in error herein, against whom this action was commenced on September 9, 1927.

Israel Gaines died intestate while a minor in 1911, unmarried and without issue, leaving as his only heirs his father, Thomas Gaines, and his brother, William Gaines.

Defendant answered and set up these conveyances and alleged the approval of the deed from Thomas Gaines to E. F. Short by the county court of Latimer county, the court having jurisdiction of the settlement of the estate of Wesley Gaines, and prayed that her title be quieted.

Thereupon plaintiff, by amended reply, attacked the validity of the guardianship sale as being fraudulent and void; attacked the approval of the Thomas Gaines' deed as being void, and prayed for recovery of the whole of said land.

In the meantime T. H. Williams, attorney for plaintiff, asked and obtained leave to intervene, and in his petition of intervention set up a contract and agreement with plaintiff whereby plaintiff agreed to and did convey to said Williams an undivided one-half interest in all land involved, and one-half of all rents, revenues, and royalties arising therefrom (the interest conveyed being one-half of the recovery). This conveyance being as and in full compensation for Williams' services as attorney in representing plaintiff in this action, he prayed that he be adjudged the owner of an undivided one-fourth interest in the premises.

On application of defendant, Short and his wife were made parties defendant. They, being served only by publication, made no appearance. Issues being joined, the cause was tried to the court without a jury, resulting in a holding that the warranty deed from Thomas Gaines to E. F. Short, dated December 28, 1909, and all other deeds in the chain of title of defendants, were wholly void and without legal force or effect:

"* * * For the reason that said grantor, Thomas Gaines, a full-blood restricted Indian, was prohibited by acts of Congress, from alienating his inherited interest in the allotment of Wesley Gaines, deceased, unless said deed was approved by the county court having jurisdiction over the estate of Wesley Gaines, deceased. The court finds that the approval of said warranty deed by the county court of Latimer county, Okla., on the first day of October, 1927, is wholly void, and without force or effect, and that said deed and approval thereof constitutes a cloud upon the plaintiff's title, and should be canceled from the records.

"That the deed conveying Thomas Gaines' life estate to E. F. Short is the only valid and legal conveyance made by Thomas Gaines of his interest in the land, and that upon the death of Thomas Gaines in July, 1923, the life estate terminated, and one-half interest in the lands thereupon descended in fee simple to plaintiff, William Gaines."

The court further found and held:

"The court further finds that the guardian's sale in the county court of Le Flore county, Okla., of the undivided interest of said minors, William Gaines and Israel Gaines, in and to the land hereinabove described, and the subsequent guardian's deed, dated February 14, 1909, executed by Thomas Gaines, guardian to W. C. Beesley, as same is recorded in Book 58, at page 196 of the records of Grady county, Okla., is wholly void and without force or effect, and the court finds that said guardianship proceedings and said guardian's deed were not legally had and conducted in the manner provided by law. The court finds that W. C. Beasley, the attorney for the guardian and the grantee in said guardian's deed, acted in bad faith, to his own financial benefit, and to the detriment of said minors, and that the fraud of the said W. C. Beasley is sufficient in itself to avoid said sale.

"The court further finds that the defendant herein was not a bona fide purchaser for value, and that said defendant had sufficient record knowledge of the fraud practiced in said guardianship proceedings, to charge her with actual notice of the invalidity of said sale, and the court finds that said guardian's deed, and all other deeds in said chain of title are void, a cloud upon plaintiff's title, and should be canceled from the records."

The court sustained the plea of intervention of T. C. Williams, Jr., and adjudged him to be the owner of an undivided one-half interest in the land, and plaintiff the owner of the other one-half.

From this judgment defendant appeals.

The first proposition presented is that the court erred in holding that the warranty deed from Thomas Gaines, dated December 28, 1909, and the approval thereof by the county court of Latimer county on October 1, 1927, was wholly void and without force and effect. As before stated, the only grounds relied upon by plaintiff to avoid said deed was that said Thomas Gaines was enrolled as a full-blood member of the Choctaw Tribe of Indians, and that such deed was not approved during the lifetime of said Thomas Gaines.

Every question raised by plaintiff and intervener on this question was decided by this court adversely to their contention in the recent case of Jones et al. v. Merfeldt et al., 167 Okla. 520, 30 P. (2d) 924. Therein it was held:

"Attorneys who procure a contract from an heir of a full-blood Indian to recover inherited allotted land attempted to be conveyed by such full-blood Indian during his lifetime by deed without the approval of

the county court having jurisdiction of the estate of the allottee, and where such contract provides for an interest in the lands to be recovered by the attorneys as their fee, are not entitled to recover anything in a suit to recover such land, unless it be shown that the heir with whom they contract is entitled to recover.

"Deeds by full-blood Indians conveying lands inherited from the allottee may be approved by the county court at any time, before or after the death of the grantor, and, when so approved, the deed becomes effective so as to cut out heirs of the grantor and in favor of the grantee."

We see no reason for departing from the rule there announced. Thereunder it is clear that the court erred in its holding as to the undivided one-half of the allotment inherited by the father, Thomas Gaines.

We next consider the undivided one-half interest in the land which, upon the death of the allottee, descended to the two brothers, Israel Gaines and plaintiff herein, William Gaines, and was sold at guardian's sale to W. C. Beasley.

The trial court found that W. C. Beasley, attorney for the guardian and purchaser at the guardian's sale, acted in bad faith to his own financial benefit and to the detriment of the minors, and that this fraud was sufficient in itself to void the guardian's sale.

This is undoubtedly true, had the action been one against the purchaser, W. C. Beasley, or his grantee, E. F. Short, for there was fraud and collusion on their part of the most reprehensible sort.

The court further found that defendant, Alice M. Gilbert, was not a bona fide purchaser for value, and that she had sufficient record knowledge of the fraud practiced in said guardianship proceedings to charge her with actual notice of the invalidity of said sale.

It was stipulated by the parties at the trial that defendant, Alice M. Gilbert, had no knowledge of any of the transactions other than that disclosed by the record. Plaintiff admitted that she had no actual notice, but contended that she had constructive notice.

The irregularities relied upon in the pleading by plaintiff in the guardianship proceedings in the county court, of which there was any evidence tending to support, are:

That the petition of the guardian for an order of sale was not verified in the manner provided by law and was void for the further reason that the law firm of Harrison & Beasley were attorneys of record for the guardian and conducted the purported sale, and that the purported verification of the petition to sell was before W. C. Beasley as notary public.

That W. C. Beasley, who acted as one of the attorneys for the guardian and the notary before whom the petition to sell was verified, was the purchaser at said guardianship sale, and was for the reasons stated incompetent to purchase at said sale.

The only defect in the verification of the petition, aside from the fact that it was before W. C. Beasley, one of the attorneys for the guardian, is failure to attach his notarial seal.

It is not now seriously contended that because the petition was verified before one of the attorneys for the guardian, and the notary failed to attach his seal, this deprived the county court of jurisdiction to hear and consider the petition. If attacked directly in the probate proceedings, the defect would have been sufficient to require a rejection of the verification. But the defect is not one that may be successfully assailed in a collateral attack.

The real fraud relied upon is that on December 10, 1908, before the sale was made. E. F. Short and W. C. Beasley entered into a written contract whereby Short agreed to buy the interest of the minors and pay therefor the sum of $3,200, Short to bid such amount as was necessary to buy the land, and if this should be less than $3,200. he was to pay Beasley the difference between the sum bid and $3,200.

At the sale Short did not appear to bid on the land, whereupon Beasley bid in the land himself at $1,500. The land had been appraised at $21 per acre, and, upon the return of sale, the county court refused to confirm the sale at $1,500, whereupon Beasley raised his bid to $2,000. The sale was thereupon confirmed at the bid of $2,000, and guardian's deed was executed to Beasley. The next day Beasley conveyed to Short and Short paid him $3,200. Beasley accounted to the guardian for the $2,000, and kept the $1,200, thereby profiting to that extent out of the deal.

There was no indication whatever of this transaction appearing in the probate record proper in the county court. Sometime thereafter, on or before July 30, 1909, Robert E. Patrick, surety on the guardian's bond

and special bond of Thomas Gaines, the guardian, learned of the manner in which W. C. Beasley secured for himself the $1,200, and being fearful that he, Patrick, might be called upon to make this sum good under his bond, commenced an action in the district court of Le Flore county against Thomas Gaines, Harrison & Beasley and the two minors, having for its purpose the recovery of the full purchase price and the accounting therefor to the minors and his release from liability on the bond. In the meantime Thomas Gaines had been removed as guardian.

There does appear, however, an application by Thomas Gaines, guardian, for an order requiring Harrison & Beasley to account for the $2,000 purchase price of the land. This was filed January 25, 1909, requiring Harrison & Beasley to account by July 1, 1909, for any money in their hands belonging to the estate of the minors. It made no mention of the $1,200 retained by Beasley.

October 17, 1909, one Frank Lewis was appointed as guardian and appeared and filed an answer in the cause. That cause was referred to a referee, and in the proceedings in the cause the contract above referred to between Short and Beasley was introduced in evidence.

The referee made findings of fact and conclusions of law, finding in substance that the agreement between Short and Beasley had been carried out, and that Beasley had received and retained the $1,200 difference between the amount bid by him for the minor's interest in the land and the amount paid by Short to Beasley, and recommended that judgment be rendered in favor of Frank Lewis, the new guardian, and against Harrison, Beasley, and Patrick, as well as Thomas Gaines. The report appears to have been approved by the court except as to the recommendation for judgment against Thomas Gaines. There was introduced in this action an unsigned order, and judgment appears to have been made by the judge of the district court to that effect.

The only reference to that suit in the probate proceedings is an application of Frank Lewis, the new guardian, filed in the county court on September 14, 1909, wherein he recites that "said minors have been sued in the district court of Le Flore county, in an action therein pending, wherein R. E. Patrick is plaintiff and W. H. Harrison, W. C. Beasley, Thomas Gaines, and others are defendants * * * that a large sum of money, to wit, $2,700, is in controversy which belongs to said minors," etc; authority to employ counsel and pay the reasonable compensation was requested.

At the trial of this cause the petition and report of the referee in the R. E. Patrick case in the district court of Le Flore county, together with a certified copy of the contract between Short and Beasley, were offered and admitted in evidence over the objection of defendant, Alice Mae Gilbert.

It is contended that the admission of these records in evidence was error, in that the title to the land in controversy was not there involved; that the action was one in personam only, and that defendant herein was not a party and not bound by any of the proceedings therein.

On the other hand, plaintiff contends that all the proceedings in the Patrick suit were admissible as being evidence of that which a fair investigation would have disclosed to defendant suggested to her by the record in the county court.

It must be borne in mind that this is not an action against the purchaser at the guardian's sale, but is an action against a remote grantee of such purchaser, and it is agreed that the defendant herein had no actual notice of any fraud except such as was afforded or suggested by the record in the county court. In such case, subsequent purchasers from a grantee in a guardian's sale must look only to the record proper in the county court and pursue such inquiry as is suggested by such record.

The petition for an order of sale is material and notice must be taken of it, for the jurisdiction of the county court to make an order of sale depends upon its sufficiency. Notice of the order of sale must be taken for the reason that without a sufficient order of the county court, the guardian is without power to sell. Notice must also be taken of the order confirming the sale, for this is the final judgment of the county court approving the regularity of the sale. Of course, he must look to the guardian's deed, as that is a part of the chain of title, but it is no part of the record proper of the county court. An examination of the petition to sell would, of course, disclose the defect in the verification thereof. But this was a mere irregularity which, under all the decisions

of this court, was cured by the order confirming the sale. An examination of the order of sale would have disclosed no irregularity whatever and would have suggested no fraud. An examination of the order confirming the sale would have disclosed that W. C. Beasley, one of the attorneys for the guardian, was the purchaser at the sale. But it would also have disclosed that the county court was fully aware of this fact; confirmed the sale with full knowledge thereof. It would not have suggested anything whatever concerning the amount actually paid by Short for the land, or that Beasley had profited to the extent of $1,200, or any other sum.

It may be considered as doubtful whether or not the subsequent filing of an application for an accounting for the $2,000 purchase price, or a part thereof, and the later filing of an application for leave to employ an attorney in the Patrick suit, were sufficient to put defendant upon inquiry, which if pursued might have disclosed the fraud practiced by Beasley. Conceding, without deciding, that it was sufficient to put defendant upon inquiry, and a record of which she was bound to take notice, then what would the inquiry have disclosed? If the defendant had thereby learned of the Patrick suit and all the allegations in the petition, the report of the referee, the contract betwen Short and Beasley, and the purported judgment against Beasley, she would also have learned the settlement and payment of said judgment.

The whole record would then have disclosed that Beasley had in fact sold the land for $1,200 more than he reported to the court. That upon learning of this fact, the minors, upon attaining their majority, or before, through their guardian, had an election between two remedies: (1) Set aside the sale, or (2) bring an action to recover the $1,200 as a part of the real sale price of the land.

The guardian elected to prosecute a cross-action against Harrison and Beasley to recover $1,200. He was successful and apparently obtained judgment. which was paid. or at least settled satisfactorily so that the minors obtained the full relief to which they were entitled under one of the remedies open to them. We are not unmindful of the rule applied in Mitchell v. Rice, 132 Ala. 120, 31 So. 498, to the effect that the election by a guardian to pursue one of two reme-

dies open to his ward, in which he is unsuccessful, does not preclude the ward from pursuing such other remedy as he may have had, and that to bind an infant to an election of remedies which will prejudice the ward's interest is not within the scope of a guardian's representative power. But where the guardian does elect to pursue one of two remedies which the ward might himself do upon attaining his majority, and pursues that remedy to full fruition, the ward ought not to be allowed upon obtaining his majority to pursue the other remedy, and thereby obtain the benefit of both remedies. At least the ward should be required, if permitted to repudiate the actions of his guardian at all, to do so promptly, and within three years after attaining his majority. This plaintiff did not do, for it is stipulated in the record that plaintiff was more than 24 years of age at the time this action was commenced, and more than 15 years had elapsed after the guardian's deed was issued and placed of record.

The judgment of the trial court as to the whole interest in the land involved is reversed and the cause is remanded, with. directions to enter judgment for defendant.

SWINDALL, McNEILL, BAYLESS, and WELCH,, JJ., concur.